NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HEALTHIER CHOICES MANAGEMENT CORP.,**
*Appellant*

**v.**

**PHILIP MORRIS PRODUCTS S.A., PHILIP MORRIS USA, INC.,**
*Appellees*

---

2023-1529

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2021-01079, IPR2022-00454.

---

Decided:  November 22, 2024

---

THOMAS FISHER, Cozen O'Connor P.C., Washington, DC, argued for appellant.  Also represented by BARRY P. GOLOB.

GABRIEL K. BELL, Latham & Watkins LLP, Washington, DC, argued for all appellees.  Appellee Philip Morris Products S.A. also represented by MAXIMILIAN A. GRANT, DAVID ZUCKER; RICHARD GREGORY FRENKEL, Menlo Park, CA.

ADAM BANKS, Weil, Gotshal & Manges LLP, New York, NY, for appellee Philip Morris USA, Inc. Also represented by ELIZABETH WEISWASSER; WILLIAM SUTTON ANSLEY, Washington, DC.

_____

Before LOURIE, STOLL, and STARK, *Circuit Judges*.

STOLL, *Circuit Judge*.

Appellant Healthier Choices Management Corp. ("Healthier Choices") appeals from a final written decision of the United States Patent and Trademark Office Patent Trial and Appeal Board (the "Board"), in which the Board: (1) held claims 1–8 of U.S. Patent No. 10,561,170 unpatentable as anticipated by the asserted prior art, and (2) denied Healthier Choices' Revised Contingent Motion to Amend as to proposed substitute claims 9–16. For the following reasons, we affirm.

## BACKGROUND

This appeal pertains to an *inter partes* review (IPR) in which Appellees Philip Morris Products S.A. and Philip Morris USA, Inc. (together, "Philip Morris") challenged claims of the '170 patent, which is directed to an electronic pipe. Claim 1 of the '170 patent is illustrative of the subject matter of claims 1–8. Claim 1 recites:

1. An electronic pipe, comprising:

a battery, an electronic module, a combustible material reservoir, and a heating element fixed in the combustible material reservoir;

combustible material loaded into the combustible material reservoir;

wherein the pipe is structured to transmit an electric current from the battery to the heating element, the heating element initiating a

combustion reaction in the combustible material reservoir.

'170 patent col. 9 l. 35–col. 10 l. 4.

The Board found that Philip Morris, whose evidence included expert testimony from Dr. Seetharama C. Deevi, had established by a preponderance of the evidence that prior art reference U.S. Patent Application Publication No. 2012/0160251 ("Hammel") discloses each limitation of claims 1 and 5, including "a heating element fixed in the combustible material reservoir"—which is the only claim language at issue on appeal with respect to claims 1–8.

Because the Board determined that claims 1–8 of the '170 patent were unpatentable, it proceeded to address Healthier Choices' Revised Contingent Motion to Amend. As a replacement for claim 1, Healthier Choices proposed revised substitute claim 9, which is reproduced below with annotations showing amendments to claim 1:

[1]9. An electronic pipe, comprising:

[9a] a first portion having a cross-sectional shape and housing a battery[,] and an electronic module[,];

[9b] a second portion having the cross-sectional shape and adjacent to the first portion along an axis through a center of the cross sectional shape, the second portion housing a combustible material reservoir, and including an ambient air inlet fluidly connected to the combustible material reservoir;

[9c] a heating element electrically coupled to the battery and fixed in the combustible material reservoir;

[9d] combustible material loaded into the combustible material reservoir;

[9e] wherein the electronic module causes pipe is structured to transmit an electric current to flow

from the battery to the heating element, <u>causing the heating element to heat the combustible material within the combustible material reservoir to initiate</u> ~~initiating~~ a combustion reaction in the combustible material reservoir<u>, and</u>

[9f] <u>the ambient air inlet is configured to provide a passageway for ambient air to enter the second portion, flow through the combustible material within the combustible material reservoir, and exit the second portion in an inhalation direction parallel to the axis.</u>

J.A. 28–29.   Claim limitations 9b and 9f are at issue on appeal.

The Board found that: (1) U.S. Patent Application No. 15/923,848, from which the '170 patent was issued,[1] does not contain an explicit description of the "ambient air inlet" as Healthier Choices construes that term, i.e., "an aperture that excludes air passage through the first pipe section"; and (2) Healthier Choices failed to meet its burden to show that "a person of ordinary skill in the art would have understood that the ambient air inlet was necessarily comprehended in the written description of the '848 application." J.A. 33.   Accordingly, the Board found that Healthier Choices failed to sufficiently identify adequate written description support for all elements in the revised proposed substitute claims and denied the Revised Contingent Motion to Amend.

Healthier Choices appeals.   We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c).

---

[1]   In pertinent part, the '848 application contains the same written description as the '170 patent thus, for simplicity, our analysis below refers to the written description of the '170 patent.

## DISCUSSION

### I

We begin by determining whether substantial evidence supports the Board's finding that Hammel discloses a heating element fixed in the combustible material reservoir and thus anticipates the '170 patent claims. We conclude that it does.

"A patent is invalid for anticipation under 35 U.S.C. § 102 if a single prior art reference discloses each and every limitation of the claimed invention." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014) (footnote omitted). Anticipation is "a question of fact that we review for substantial evidence." *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1295 (Fed. Cir. 2021). "A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding." *Regents of the Univ. of Minn. v. Gilead Scis., Inc.*, 61 F.4th 1350, 1355 (Fed. Cir. 2023).

The Board rejected Healthier Choices' argument that Hammel is silent as to "how the components are interconnected, and how the device operates" because Hammel's disclosure "includes a circuit diagram showing electrical connections, including from battery 1 to heater 11, as controlled by controller 7 and initiated by mouthpiece switch 3." J.A. 24 (citing Hammel's Figure 1 (J.A. 1542) and written description (J.A. 1547)). The Board also explained that Healthier Choices' "assertions that Hammel's disclosure is insufficient . . . do not adequately credit the ability of a person of ordinary skill in the art to interpret Hammel's figures as a whole." *Id.* The Board found that: (1) "a person of ordinary skill would have reasonably understood from Hammel's figures that its heating element has legs that fix it in place in holes within the porcelain tube," and (2) "Dr. Deevi's explanation of Hammel supports a reasonable inference that it discloses a heating element fixed in the combustible material

reservoir." J.A. 25. Substantial evidence supports the Board's findings.

In his Declaration, Dr. Deevi explained the following.

Hammel's "heating element or heating wire is 'an electrically heated element' that is used 'to combust the tobacco that is placed within the chamber' of the device." J.A. 1440–41 ¶ 243 (quoting Hammel's Abstract (J.A. 1541)); *see also id.* (Hammel discloses "an electric heating wire that generates heat for burning the tobacco" (citing Hammel's claims 1 and 5 (J.A. 1547))); J.A. 1442–43 ¶ 244 (Hammel's claims "note that tobacco is placed in the tube, and the heating element burns the tobacco in the tube" (citing Hammel's claims 1, 4, and 5 (J.A. 1547))).

Hammel's Figure 2 shows that: (1) "the heating wire is located inside the bottom half porcelain tube when the hinged case lid is open"; (2) "the heating wire extends longitudinally through the bottom half tube, along the length of the case body"; and (3) "two short legs . . . hold [the heating wire] in place within the bottom half tube." J.A. 1441–42 ¶ 244; J.A. 1543. Hammel's Figure 3 shows that "the[] legs allow the heating wire to connect, through the top of the case body, to the battery and the electrical components inside the case." J.A. 1442 ¶ 244; J.A. 1544. A person of ordinary skill in the art "would understand that if the heating wire were not fixed within the porcelain tube, as it is shown to be in Figures 2 and 3, it would not be able to burn the tobacco that is placed inside the porcelain tube." J.A. 1443 ¶ 244; J.A. 1543–44.

Hammel's Figure 1 "shows current flows from the battery . . . to the heater," and an "output voltage is applied to the heater as a result of current from the battery." J.A. 1447 ¶ 254; J.A. 1542. "When the user inhales on the device, it activates the device by closing the electric switch, causing power to flow from the battery to . . . the heater." J.A. 1448–49 ¶ 255 (citing Hammel's Abstract (J.A. 1541) and claim 3 (J.A. 1547)).

The Board explicitly credited Dr. Deevi and relied on his testimony. Dr. Deevi's analysis is detailed, directly supported by the record, and "not conclusory or otherwise defective." *See Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1373–74, 1376 (Fed. Cir. 2020) ("[E]xpert testimony can constitute substantial evidence of anticipation when the expert explains in detail how each claim element is disclosed in the prior art reference."). The Board was thus "within its discretion to give that testimony dispositive weight." *Id.* at 1376.

Because substantial evidence supports the Board's finding that Hammel discloses a heating element fixed in the combustible material reservoir and thus anticipates the '170 patent claims, we affirm the Board's decision as to this issue.

II

We next address whether substantial evidence supports the Board's finding that Healthier Choices failed to show that the '170 patent's written description reasonably conveys to a person of ordinary skill in the art that the inventors of the '170 patent had possession of the claimed ambient air inlet, narrowly construed as "an aperture that excludes air passage through the first pipe section." J.A. 33–34. We again conclude that substantial evidence supports the Board's finding.

During an IPR, the patent owner may move to amend the patent by canceling challenged patent claims and, for each challenged claim, propose a reasonable number of substitute claims. *Uniloc 2017 LLC v. Hulu, LLC*, 966 F.3d 1295, 1298 (Fed. Cir. 2020) (quoting 35 U.S.C. § 316(d)(1)). The amendment "may not enlarge the scope of the claims of the patent or introduce new matter." 35 U.S.C. § 316(d)(3); 37 C.F.R. § 42.121(a)(2)(ii). "[P]roposed amended claims . . . are reassessed to determine whether they are supported by the patent's written description." *Aqua Prods. Inc. v. Matal*, 872 F.3d 1290, 1314 (Fed. Cir.

2017) (en banc). The written description requirement is met when the disclosure relied on for support "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). "The test for written description requires an 'objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.' This inquiry is a question of fact that we review for substantial evidence." *RAI Strategic Holdings, Inc. v. Philip Morris Prods. S.A.*, 92 F.4th 1085, 1088 (Fed. Cir. 2024) (citation omitted).

We acknowledge that, with respect to Figure 3, the '170 patent specification provides that "a small hole, or aperture (not shown) is located in the second pipe section 140 so that air can be provided to the combustible material reservoir 165." J.A. 1228–29 ¶ 35; *see also* '170 patent col. 6 ll. 34–37. But this text does not disclose that this hole is the only hole in the device. Moreover, this language provides no information about where in the second pipe section the hole is located or from where the air comes. Yet, Healthier Choices contends that "the aperture in the second portion [is] where ambient air enters" and the "entire airflow path is within the second portion of the pipe"—thus excluding the possibility of airflow through a hole in the first pipe section. J.A. 768.

Our discussion here is limited to the circumstances presented, where the Board analyzed "ambient air inlet" as Healthier Choices construes that term—an aperture that excludes air passage through the first pipe section. No one challenges this claim construction on appeal. Our court has identified claim constructions that exclude a particular element as having a "negative limitation." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322–23 (Fed. Cir. 2003); *Ethicon LLC v. Intuitive Surgical, Inc.*, 847 F. App'x 901, 907–08 (Fed. Cir. 2021). Here, neither the original claim language nor the written description reasonably

conveys that the inventors possessed this negative limitation. Nothing in the specification affirmatively excludes the existence of an ambient air hole in the first pipe section 102 or a hole in the connector 145. When the "specification is itself silent regarding a negative limitation, testimony from a skilled artisan as to possibilities or probabilities that the recited element would be excluded [does] not suffice." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017 (Fed. Cir. 2022). Healthier Choices has not established that an air passage through the first pipe section "would always be understood by skilled artisans as being necessarily excluded from a particular claimed method or apparatus if that limitation is not mentioned." *Id.* at 1018. In fact, the '170 patent shows just the opposite. In the description of Figure 4, the '170 patent provides: "[a]n air inlet (not shown), in the form of a hole or aperture, may be located in the external wall of the casing 15 *allowing passage of ambient air into the first chamber* 20." '170 patent col. 8 ll. 29–32 (emphasis added). We are reluctant to read a written description to affirmatively exclude or disclaim an element absent an express statement to that effect.

For these reasons, we hold that substantial evidence supports the Board's finding that there is no "written description support for an inlet direct to ambient air and excluding air passage through the first pipe section." J.A. 33–34. Accordingly, we affirm the Board's denial of Healthier Choices' Revised Contingent Motion to Amend.

## CONCLUSION

We have considered Healthier Choices' other arguments and find them unpersuasive. For the foregoing reasons, we conclude that substantial evidence supports the Board's findings challenged on appeal. We thus affirm.

## AFFIRMED